## Case No. 14,939.

### UNITED STATES v. DE HARO.

[Hoff. Dec. 53.]

District Court, N. D. California. 1862.[1]

MEXICAN LAND GRANT — LICENSE TO OCCUPY — EFFECT.

[On a petition for the grant of land for pasturage, the secretary reported that the land was vacant, but suggested that, as the ejidos of the neighboring pueblo had not been designated, the petitioner might "in the meantime" occupy the land under "a provisional license"; and the governor accordingly executed a document permitting the petitioners to occupy the land subject to the measurement which might be made of the ejidos of the pueblo, and providing that they should lose their rights "to this provisional concession" if they violated the conditions thereof. Held, that such document gave the petitioners no rights to the absolute fee which should be respected by the United States.]

HOFFMAN, District Judge. On the 12th of April, 1844, Ramon and Francisco de Haro presented a petition to the governor in which they alleged that, being compelled to remove the cattle of their deceased mother from the rancho of José Antonio Sanchez, they desired the grant of a small piece of land called the Potrero de San Francisco, in extent from north to south 2,288 varas, and from east to west 2,508 varas. They further stated that the land could be enclosed, and that they intended to place in it tame cattle, as their father's land was insufficient, and as they had obtained, being minors, his permission to make their petition. This petition was, on the 29th April, referred to the secretary, who, on the same day, reported that the land was vacant, as the mission of San Francisco, within the lands of which it was included, had no property whatever. But he suggests that inasmuch as the ejidos of the pueblo had not been designated, the petitioners might in the meantime occupy the land under a provisional license. In pursuance of this report, a document was signed and issued by the governor, in which he declares that, in conformity with the laws and regulations governing the matter, he has resolved to permit the petitioners to occupy the land, subjecting them to the measurement which may

1 [Affirmed in 5 Wall. (72 U. S.) 599.]

be made of the ejidos of the establishment of San Francisco, and subject to the following conditions, etc., .etc. The 3d condition is as follows: "The land of which mention is made is one-half a square league, and if they violate these conditions they will lose their rights to this provisional concession, which is delivered to the parties for their security and for these ends."

The expediente containing these various documents is found in the archives. The concession is noted on Jimeno's Index and the Toma de Razon for 1844. No doubt of their genuineness can, therefore, be entertained. But on the sheet containing the copy of the provisional license delivered to the party interested, and now produced by the claimants, is found a grant dated May 24, 1844, purporting to be signed by the governor, and reciting that, having ascertained, on proper inquiry, that the grant will neither interfere with the limits of the new town of Yerba Buena nor be injurious to the mission, he (the governor,) "has determined, in accordance with the opinion of the departmental assembly expressed in their decree of this date, to grant the land in full property to Ramon and Francisco de Haro, that they may do what they please with it." The claimants also produced before · the board a second grant, dated Sept. 18th, 1844, purporting to have been made by Governor Micheltorena, in which the land is described as of the breadth of 3,000 varas and of the same number of varas in length, and the De Haros are declared the owners of it in full property, in consideration of the services rendered by, and the indebtedness of the public treasury to, their father, Don Francisco de Haro. The first of these two grants, viz. that written on the same sheet of paper as the provisional license and purporting to ratify and make absolute the latter, was clearly proven before the board to be a forgery. It was virtually abandoned by the claimants, by filing, on the 2d March, 1854, the second grant dated Sept. 18th, 1844. On the faith of this title paper the claim was confirmed by the board, though not without grave doubts as to its genuineness. The cause having been appealed to this court, further proof was taken, and on the hearing the second grant, also, with the series of perjuries by which it had been attempted to be supported, was formally abandoned by the counsel for the claimant, and the claim to a confirmation based solely on the provisional license above mentioned and the proofs showing an occupation under it. It is apparent from the terms of this document, that the governor refused to accede to the petition of the De Haros for a grant of the land. But inasmuch as they required a piece of land whereon to place the cattle of their mother, which could no longer remain on the rancho of Sanchez, the governor determined to allow them to occupy temporarily the tract solicited, as it was not then used by the mission. The language of Jimeno indicates with entire precision the nature of the rights intended to be conceded. He speaks of it not as a provisional grant, but a "provisional license" to occupy land. In the document issued by the governor, he declares that "he has determined to permit them to occupy the land"; and in the third condition, the usual phrase which declares that the party shall lose his right to the land (al terreno), in case he violates the conditions, is altered to "he shall lose his right to this provisional concession." That this change of phraseology was not accidental, is apparent on examination of the copy of the permit retained in the archives. This document is in the handwriting of Jimeno. In writing the last condition, he had evidently pursued the usual form, and written "perdera su derecho al terreno y sera," etc.; but recollecting that the instrument was not a grant, and conferred no rights "to the land," he has erased those words, and substituted the phrase above quoted, "perdera su derecho a esta concession provisional," etc. A similar alteration in phraseology appears in the note by Jimeno, of the recording of the grant. Instead of the usual form, "Queda tomada razon de este titulo en el libro correspondiente," the phrase, "Queda tomada razon de esta licencia provisional en el libro correspondiente," is substituted, indicating the clear discrimination in Jimeno's mind between a grant, whether absolute or provisional, and the mere license to occupy, which he was signing. As observed by the counsel for the United States, "These acts of Jimeno give character to the document signed by Micheltorena, and fix its meaning with a certainty."

It is urged on the part of the claimant, that this provisional license carried with it the promise of the absolute fee, or that it was in fact a grant defeasible only in the event that the land was included within the ejidos to be measured, and, as that event has become impossible, that the grant is now single and absolute. But we have already seen by the terms of the document itself, as well as by the language of Jimeno with regard to it, that the right conferred was a mere license to occupy, and that not permanently, but "in the meanwhile," until the ejidos should be measured. The instrument contains no words of grant, either provisional or otherwise, of the land; and it must have been known to the governor and Jimeno that the lands must eventually be included within the four leagues which was ordinarily assigned to pueblos as ejidos. The petition of the De Haros showed, not only that they wished for a grant of the land, but that they were then in want of some place on which to put their mother's cattle. The governor, though he refused to grant the land, very naturally consented to its temporary use for the purpose designated. And the document issued to the parties is precisely such as would effectuate such an intention. I think it

very clear that this instrument cannot be regarded as a conditional grant, defeasible only on the measurement of the ejidos, but that it is a concession, not of any land, but merely of the right to occupy land.

But it is urged that under the Mexican system a concession, even of this nature, implied a promise that the full title should be given, and, when followed by possession and occupation, that an equity arises which the United States are bound to respect. In support of this view the cases of U. S. v. Alviso [23 How. (64 U. S.) 318], decided by the supreme court, and U. S. v. Chaboya [Case No. 14,770], and U. S. v. Bidwell [Id. 14,592], decided by the board and this court, are relied on. In the Case of Alviso the claimant had petitioned the governor for a grant of the land and permission to occupy while the proceedings for the perfection of the title were pending. This petition was granted, and the administrator of the ex-mission of San Francisco directed to report. In 1839 this order was exhibited to the prefect, who agreed to reserve the land for the claimant, and that he might occupy it, referring him to the governor for a complete title. In 1840 the administrator reported that the land was vacant, and did not belong to the mission or any private person. The testimony showed that the occupation of the claimant commenced in 1840, and had continued for fourteen years, that he had improved and cultivated the land, and that his family resided on it. No objection was suggested why the claimant should not have have been a colonist of the portion of the public domain solicited by him, and of which he had been recognized as proprietor since 1840. The court, under these circumstances, refused to disturb his ancient possession. It will be perceived that this case differs from that under consideration in several important particulars. The land solicited was situated on the shores of the ocean, at a distance of from twenty to thirty miles from the mission of San Francisco de Asis. It was vacant, and was not recognized as the property of the mission or any private individual. The propriety of granting it was recognized by the prefect, who permitted the claimants to occupy it, and shown by the report to the administrator to whom the governor referred the petition. There could, therefore, as observed by the supreme court, have existed no objection to making the grant. The right of occupation conceded to the claimant was thus clearly in expectation of the full title, and was in terms solicited by him, and granted by the governor, "while the proceedings for the perfection of the title were pending." When, therefore, after having taken possession of the land, improved, cultivated and built a house on it, in which he had resided as the recognized owner for fourteen years, Alviso presented his claim to the board, it was manifestly unjust to disturb him, because his title had not been perfected. But in the case at bar the land solicited would evidently fall within the ejidos of the

pueblo whereon they should be measured. It had even before the date of the petition been enclosed by a wall built by the fathers of the mission. The grant solicited was refused, but a permission to occupy temporarily was given, not, as in Alviso's Case, "while further proceedings for the perfection of the title were pending," but merely until the ejidos should be measured. We look in vain in the expediente for any evidence not only of a promise but even of an intention or expectation, on the part of the governor, to grant the land in full property. But admitting that such an intention or expectation could be inferred from the mere fact that the right to occupy the tract in question temporarily with their mother's cattle was conceded to the petitioners, the case in other respects is far weaker than of Alviso.

It is, I think, conclusively established by the proofs, notwithstanding some evidence to the contrary, that the petitioner neither resided on nor cultivated the land. After the grant, as before, they continued to live with their father at the mission, or at his rancho of San Bruno. They no doubt repaired the old wall which had been erected by the priests, and which, as the land was enclosed on three sides by water, served to enclose it. On this tract they placed their cattle and horses, which were readily attended to by themselves or their vaqueros residing at the mission. It may well be doubted whether this use, under these circumstances, of a valuable and convenient piece of land immediately adjoining the mission, and not more than a league distant from the present city of San Francisco, and which had even been enclosed by the fathers, could be considered such an occupation and cultivation of vacant land as under the colonization laws would raise an equity which the Mexican or this government is bound to respect. It would seem that the petitioners rather received a benefit from than conferred one on the government. It is to be observed that the supreme court did not, in the Case of Alviso, nor have they in any other, decided that a mere permission to occupy, followed by actual occupation, is sufficient to entitle the claimant to confirmation. The contrary doctrine is clearly announced in the case of U. S. v. Garcia, 22 How. [63 U. S.] 282. It is evident that each case must depend on its own circumstances. Where, as in Alviso's Case, the permission was evidently given in contemplation of the future title to be issued; where the reports are favorable and recommend a grant; where no objection is suggested why the claimant should not have been a colonist of that portion of the public domain; where the land is vacant, and has been occupied, and dwelt upon by the claimant for fourteen years,—the claim will be confirmed. But even in such a case it is evident that the confirmation is based upon the equity arising from the ancient possession, under a notorious and recognized claim of

title, rather than upon any promise to make a grant implied from the mere fact of a permission to occupy.

With respect to the case of U. S. v. Chaboya [supra], decided by this court, it is sufficient to say that the permission was given to occupy "while the suitable procedure was going on," that the report of the prefect was not only favorable to the issuance of the grant, but informed the governor, that "the opposition made to it by the residents of the pueblo had no other design than to remove Chaboya from the land he had occupied for many years, and was absolutely destitute of justice." And what is more important, that it appeared by the proofs that in 1837 Chaboya built a house upon the land, fenced in a considerable portion of it, and had, at the date of the confirmation, been residing on it with his wife and numerous family for twenty-two years. The case of U. S. v. Bidwell [supra], was confirmed by the board; but the confirmation was based on the general title of Micheltorena, at that time supposed, when followed by occupation and cultivation, to have confirmed incontestable rights. The claimant, it is true, presented two provisional grants. These, it appeared were issued by the governor in that form, not from any objection to making the full title, but on the advice of Jimeno, who after reporting favorably to the petition, suggested "that on account of the governor's contemplated visit to that part of the country, the land should be granted provisionally, subject to the ulterior disposition which his excellency might see fit to make of the matter." Under this grant the land was occupied and cultivated, and a house and corral erected upon it.

It will be observed that, in this case, the concession was not of a mere license to occupy, but a grant (the provisional) of the land. In their opinion, the board say: "From the language of the provisional title paper in this case, in connection with the circumstances under which it issued, it may be fairly understood to have been the intention of the governor to make a grant of the land in fee to Dickey and his heirs, subject only to be defeated by some subsequent act of the governor, and no such act having taken place, it may perhaps be considered as absolute." It is precisely in these particulars that the grant to Dickey differs from the permission to occupy given to the De Haros. The intention of the governor referred to by the board was not an intention to make a grant at some future period, but an intention to make a present grant, or rather that the title issued by him should operate as a grant unless defeated by some subsequent act of his own. But no such effect can be attributed to the license given in the case at bar. The most that the ingenuity of counsel has been able to discover in it is an implied contract that if the petitioner complied with the conditions he should have a title, unless the land should be embraced within the ejidos of the pueblo. It is evident, therefore, that even if the decision in U. S. v. Bidwell [supra], had turned upon the point we have been considering, and that decision were binding on this court, it would have no application to the case at bar.

The only ground on which a confirmation of this claim can plausibly be urged is that just referred to, viz., that the document issued by the governor amounted to a declaration that the party might go into possession, with the implied promise that if he fulfilled the law, and the land was not required for ejidos, he should have a title. But neither the terms of the concession, nor the circumstances under which it issued, can, in my judgment, admit of such a construction. If the permission to occupy had been given "while the proceedings to subject the title were pending"; if the governor had indicated a willingness to grant; if the reports had been favorable, and no obstacle were suggested why the grant should not have been made; if the claimant had gone into possession as owner, and had lived with his family on the land for fourteen years, as in Alviso's Case, or twenty-two years, as in the Case of Chaboya,—the claim should, in analogy to those cases, be confirmed. But in this case the permission is given to occupy only until an assignment of the land to the pueblo is effected. The governor not only indicates no willingness or intention to grant, but, in obedience to Jimeno's suggestion, he refuses to grant, and, ex industria, limits the concession to the permission to occupy land not then used by the mission. The objections to making the grant appear from the report of the officer to whom it was referred; and, finally, the land, at the conquest of the country, though it had been used by the claimants for a little more than two years, had never been inhabited or built upon, nor had any act been done with reference to it which, like the long residence, occupation, and cultivation of Chaboya and Alviso, might have raised an equity in favor of the claimants. It is, perhaps, not unfair to add that the forgeries and perjuries which have been so freely resorted to, to impart additional validity to this title, may justly be considered as admission on the part of the claimants of the infirmity of the only title paper they in fact received.

My opinion is that the claim should be rejected.

[NOTE. The decree entered in this case was, upon appeal by the claimants, affirmed by the supreme court. 5 Wall. (72 U. S.) 599. For other of the De Haro grants, see Cases Nos. 14,937 and 14,940.]